# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

-------------------------------------------------------- :
KENNETH HARRISON, LAURA     :     CIVIL ACTION NO. 3:02CV477(AVC)
HARRISON and D & L AUTO BODY     :
& TOWING, INC.     :
    :
      Plaintiffs,     :
    :
v.     :
    :
SEAN MCMAHON, GERALD R.     :
CHARAMUT, JOHN MIHALIK, and     :
JULIE MIHALIK     :
    :
      Defendants.     :     JANUARY 30, 2004
_____ :

## DEFENDANT SEAN MCMAHON AND GERALD CHARAMUT'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(c), the

defendants, Detective Sean McMahon and retired Police Chief Gerald Charamut, respectfully move

for summary judgment on First, Second, Third, Sixth and Seventh Counts of the plaintiffs' Complaint

based upon the undisputed facts and the doctrines of qualified and governmental immunity.

Detective McMahon and Chief Charamut do not address the Fourth, Fifth and Eighth Counts, which

are directed at co-defendants John Mihalik and Julie Mihalik. As is more fully set forth in the

accompanying Memorandum of Law, Statement of Undisputed Facts, affidavits and supporting

documents, Detective McMahon and Chief Charamut are entitled to judgment as a matter of law on the plaintiffs' Complaint, as no genuine issues of material fact exist.

In particular, the plaintiff Kenneth Harrison was arrested pursuant to a warrant signed by a neutral magistrate, which creates a presumption of probable cause for the arrest. Since probable cause is a complete defense against the plaintiffs' false arrest claims, Detective McMahon is entitled to summary judgment on the First Count of the Complaint, which alleges a false arrest claim. Furthermore, because the charges against Mr. Harrison were nolled, he cannot show that he obtained a favorable disposition sufficient to prosecute a false arrest claim.

In addition, because both plaintiff Kenneth Harrison and Laura Harrisons' pendant state law claims for intentional infliction of emotional distress are derivative of their legally insufficient federal law claim, the court should decline to exercise supplemental jurisdiction. Moreover, even if the Court were to exercise supplemental jurisdiction, the plaintiffs' alleged emotional distress claims do not rise to the level of conduct that is so outrageous as to be actionable. Therefore, the defendants are entitled to summary judgment on the Second and Sixth Counts, which allege claims for emotional distress.

Furthermore, although the Third and Seventh Counts of the Complaint purport to state claims against the Town of Berlin, the Town is not a defendant to this action and was never summoned to appear. Even if the Town were a defendant, the plaintiffs' claims against the Town are legally

348173

insufficient because the Town cannot be held vicariously liable for the claims asserted in the

Complaint.

      **WHEREFORE**, the defendants Detective Sean McMahon and Police Chief Gerald Charamut

respectfully request summary judgment on the plaintiff's Complaint.

                                    RESPECTFULLY SUBMITTED,
                                    DEFENDANTS,
                                    SEAN MCMAHON and GERALD R. CHARAMUT


                                    By:_____
                                      JAMES N. TALLBERG, ESQ.
                                      Federal Bar Number Ct17849
                                      UPDIKE, KELLY & SPELLACY, P.C.
                                      One State St., P.O. Box 231277
                                      Hartford, CT 06123-1277
                                      Tel. No. (860) 548-2600

348173

**<u>CERTIFICATION</u>**

THIS IS TO CERTIFY that a copy of the foregoing has been sent via U.S. certified mailed,

postage prepaid, this ___ day of January 2004, to the following counsel of record:

Robert O. Wynne, Esq.
Gould, Killian & Wynne
280 Trumbull Street
Hartford, CT 06103

Paul W. Smith, Esq.
36 Main Street
P.O. Box 338
Windsor Locks, CT 06096

By:_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.

348173

## DISTRICT OF CONNECTICUT

---------------------------------------------------- :
KENNETH HARRISON, LAURA     :     CIVIL ACTION NO.  3:02CV477(AVC)
HARRISON and  D & L AUTO BODY     :
& TOWING, INC.     :
    :
       Plaintiffs,     :
    :
v.     :
    :
SEAN MCMAHON, GERALD R.     :
CHARAMUT, JOHN MIHALIK, and     :
JULIE MIHALIK     :
    :
       Defendants.     :     JANUARY 30, 2004
_____ :

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEAN MCMAHON AND GERALD CHARAMUT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(c), the

defendants Detective Sean McMahon and retired Police Chief Gerald Charamut respectfully submit

this memorandum of law in support of their Motion for Summary Judgment.

## I.    INTRODUCTION

The plaintiffs Kenneth Harrison and Laura Harrison have alleged in this action that Mr.

Harrison was falsely arrested, and that both Mr. and Mrs. Harrison suffered from emotional distress,

as a result of a bad check that Mr. Harrison admits he gave to co-defendant John Mihalik.  The

plaintiff's arrest, however, was done pursuant to a warrant signed by a neutral magistrate, which creates a presumption of probable cause that the plaintiffs simply cannot overcome based upon the undisputed facts presented here.

The warrant provides a complete defense to the plaintiffs' claims. Even without the existence of a signed warrant, however, the undisputed facts establish that there was probable cause for the plaintiff's arrest, or at least arguable probable cause, meaning that Detective McMahon is protected from liability by the doctrine of qualified and governmental immunity. Moreover, none of the plaintiffs' claims rise to the level of conduct that would exceed all bounds usually tolerated by decent society. Therefore, the plaintiffs' emotional distress claims must also fail.

For these and the following reasons, Detective McMahon and Chief Charamut are entitled to summary judgment.

## II.     FACTUAL BACKGROUND

### A.     THE UNDISPUTED FACTS

#### 1.     The Bad Check

By instrument dated January 28, 1999, Mr. Harrison signed and passed a check in the amount of $2,640.00, payable to defendant John Mihalik (the "Bad Check"). A copy of the Check is attached as Exhibit A. At the time, Mr. Harrison was a principal of D & L Auto Body & Towing Co., Inc. Deposition of Kenneth Harrison of 8/8/03 ("Mr. Harrison Dep.") at 57, attached as

Exhibit B.  Defendant Julie Mihalik deposited the Check in an account at Enfield Community

Federal Credit Union.  Deposition of John Mihalik of 8/7/03 ("Mr. Mihalik Dep.") at 32, attached as

Exhibit C.  The Check was returned to Mrs. Mihalik due to insufficient funds.

On or about February 9 or 10, 1999, Mr. Mihalik complained to the Berlin Police

Department about the Bad Check.  Mr. Harrison Dep. at 16.  Detective Manning of the Berlin Police

Department called Mr. Harrison and discussed the Bad Check with him.  Id.  By certified letter

dated February 11, 1999, Mr. Mihalik informed Mr. Harrison that the Bad Check had been returned

due to insufficient funds.  Id. at 7.  A copy of the Mihalik letter dated February 11, 1999 is attached

as Exhibit D.  Mr. Harrison received the Mihalik letter regarding the Bad Check and signed the

certified return receipt.  Id. at 7.[1]

On or about February 14, 1999, Mr. Harrison obtained Western Union money orders totaling

$2,640.00 (the "Money Orders").  Id. at 11.  Copies of the Money Orders are attached as Exhibit E.

Id. at 11.  Mr. Harrison gave the Money Orders to the Mihaliks.  Id. at 9.  Mr. Harrison, however,

never signed the Money Orders.  Id. at 9.  Mrs. Mihalik attempted to deposit the Money Orders at

---

[1] Connecticut General Statutes §53a-128 provides that an issuer of a bad check is presumed to have notice of a bank's refusal to honor a check "if the drawee or payee provides proof of mailing such notice by certified mail, return receipt requested, to the issuer at his last known address."  Conn. Gen. Stat.§53a-128.

her credit union.  Deposition of Julie Mihalik of 8/7/03 ("Mrs. Mihalik Dep.") at 54, 59-60, attached as Exhibit F.  When initially presented, the credit union would not deposit or cash the Money Orders because they were not signed.  Id. at 54.

Mr. Mihalik complained to members of the Berlin Police Department regarding Mr. Harrison's failure to make restitution for the Bad Check that had been returned due to insufficient funds.  Mr. Mihalik Dep. at 53.  On February 22, 1999, Mr. Mihalik appeared at the Berlin Police Department and requested that Mr. Harrison be arrested for failing to make restitution for the Bad Check.  Mr. Mihalik Dep. at 53.  On February 22, 1999, Mr. Mihalik signed an affidavit in support of an Arrest Warrant Application (the "Arrest Warrant Application") regarding the Bad Check.  Mr. Mihalik Dep. at 53.  A copy of the Arrest Warrant Application is attached as Exhibit G.   Mr. Mihalik Dep. at 53; Affidavit of Sean McMahon of 1/30/04, ¶10, attached as Exhibit H.

Detective McMahon forwarded the Affidavit, along with a copy of the Bad Check, the letter from Mr. Mihalik to Mr. Harrison regarding the Bad Check, and copies of the Money Orders dated 2/11/99, to the Superior Court, G.A. 15.  McMahon Aff., ¶11.  On March 17, 1999, Assistant State's Attorney Carl Taylor signed the Arrest Warrant Application.  Id., ¶12.  On March 18, 1999, a Judge of the Connecticut Superior Court for G.A. 15 signed the Warrant for Mr. Harrison's arrest for violating Connecticut General Statutes §53a-128.  Id.  On March 19, 1999, the Berlin Police

Department sent a letter to Mr. Harrison informing him of the existence of the Arrest Warrant.  Mr. Harrison Dep. at 26.

On or about March 25, 1999, after receiving notice regarding the existence of the Arrest Warrant, Mr. Harrison contacted Detective McMahon and the two discussed how to resolve the matter.  Id.  During that conversation, Detective McMahon informed Mr. Harrison that he would hold the Warrant, and would delay serving it, in order to give Mr. Harrison time to resolve the dispute with Mr. Mihalik.  Mr. Harrison Dep. at 27-29.  Mr. Harrison thanked Detective McMahon for agreeing to hold warrant.  Id. at 28-29.

### 2.    Mrs. Harrison Tries to Have the Warrant Vacated

Laura Harrison, Mr. Harrison's wife, is and was a member of the Naugatuck Police Department.  Deposition of Laura Harrison of 8/8/03 ("Mrs. Harrison Dep.") at 6, attached as Exhibit I.  On March 25, 1999, Mrs. Harrison, upon learning there was a warrant for her husband's arrest, visited the Berlin Police Department and discussed the Arrest Warrant with Detective McMahon.  Mrs. Harrison Dep. at 25-26.  During that conversation, Mrs. Harrison asked Detective McMahon to have the Arrest Warrant vacated.  Id. at 33.  Mrs. Harrison also informed Detective McMahon that she was a police detective and she gave him her business card.  Id. at 30.  Mrs. Harrison said words to the effect of "maybe I can get it vacated, if we make good," on the debt that was owed.  Id. at 38.  Mrs. Harrison also told Detective McMahon that she would make restitution

in a Naugatuck Police Department envelope.  Id. at 48.  Detective McMahon believed that Mrs.

Harrison was trying to use her authority as a police detective to improperly interfere with his

handling of the Bad Check complaint against Mr. Harrison.  McMahon Aff., ¶¶21, 34.  Nonetheless,

Detective McMahon agreed to hold the Arrest Warrant so Mr. Harrison could resolve this dispute

directly with Mr. Mihalik by making restitution for the Bad Check.  Id., ¶24.

On March 30, 1999, Mr. and Mrs. Harrison visited the Berlin Police Department together.

Id. at 42-43.  During this visit, Detective McMahon and Mrs. Harrison exchanged words in the

lobby of the Berlin Police Department.  Id. at 57.  Mrs. Harrison became angry because Detective

McMahon would not vacate the Arrest Warrant.  Id. at 59.[2]  Although they exchanged words, Mrs.

Harrison never feared a physical confrontation with Detective McMahon.  Id. at 58.  Mr. Harrison

did not hear any shouting or profanity.  Mr. Harrison Dep. at 45-46.  On March 30, 1999, Mr.

Harrison was processed at the Berlin Police Department on the Arrest Warrant by Berlin Police

Officer Calderone.  Id. at 50.  Mr. Harrison was not handcuffed, nor was he searched, except to

empty his pockets.  Id. at 51.  Mr. Harrison was not verbally abused, nor was he physically abused

in any way.  Id. at 52.  The entire incident at the Police Department did not take more than

---

[2] Mrs. Harrison apparently took the position that restitution had been made and, therefore, she wanted the Arrest Warrant vacated without further delay.  Mrs. Harrison Dep. at 52 – 59.  Curiously, although the Bad Check charge was against Mr. Harrison, Mrs. Harrison did all the talking at the police department on March 30, 1999.  Mr. Harrison Dep. at 43.

approximately 45 minutes.  <u>Id.</u> at 52.  Mr. Harrison was released on a promise to appear and was not required to post any form of bond.  <u>Id.</u> at 51.

> **3.**        **<u>Events Following the Arrest</u>**

The charges against Mr. Harrison were later dismissed after the entry of a nolle.  (A copy of the Record of Court Action of 7/8/99 is attached as Exhibit J; transcript of <u>State v. Harrison</u>, CR 990182036-S of 7/8/99 at 2-3 is attached as Exhibit K.)  On April 6, 1999, because Police Chief Charamut believed that Detective Harrison had inappropriately tried to use her authority as a police officer concerning the Arrest Warrant against her husband, he sent a letter to Edward Clisham, Police Chief of the Borough of Naugatuck.  Affidavit of Gerald R. Charamut of 1/30/04, ¶¶5-6, attached hereto as Exhibit L.  A copy of Police Chief Charamut's letter is attached to Exhibit L. Mrs. Harrison was not disciplined as a result of Police Chief Charamut's letter, nor did she lose any pay.  Mrs. Harrison Dep. at 63.  Police Chief Charamut's letter has not interfered with Mrs. Harrison's career as a police officer.  <u>Id.</u> at 65.  In fact, since the time of this incident, Mrs. Harrison has been promoted from Detective to Sergeant.  <u>Id.</u>

Prior to Police Chief Charamut sending his April 6, 1999 letter to Police Chief Clisham, Mrs. Harrison had already told members of her Police Department, including her supervisors, about the Arrest Warrant involving her husband.  <u>Id.</u> at 62.  Mrs. Harrison told Detective McMahon that her colleagues on the Naugatuck Police Department didn't think he knew "what the hell" he was

doing.  Id.  It's possible that Mrs. Harrison even told Detective McMahon to go ahead and tell her

Police Chief about her actions concerning the Arrest Warrant.  Id.  In Mrs. Harrison's job as a

police officer, there are lot of jokes told on the job and a lot of locker room banter.  Id. at 58.  Mrs.

Harrison was ribbed by her fellow employees regarding this incident.  In her words, she "heard crap

about it for months afterwards."  Id. at 64.

Neither Mr. Harrison nor Mrs. Harrison have suffered from nightmares or sought psychiatric

treatment resulting from the alleged emotional distress they claim was caused by this incident.  Mr.

Harrison Dep. at 71-73; Mrs. Harrison Dep. at 68.  Neither Mr. nor Mrs. Harrison have suffered

from stomach problems or required any medication resulting from the alleged emotional distress

they claim was caused by this incident.  Mr. Harrison Dep. at 71, 68; Mrs. Harrison Dep. at 68.

Indeed, Mr. Harrison has been towing cars on the rotation list for the Berlin Police Department for

the past four years and regularly deals with the Berlin Police.  Mr. Harrison Dep. at 71.  Mr.

Harrison has admitted that, "this incident could have been avoided if [his] check hadn't bounced."

Mr. Harrison Dep. at 49.

## B.   THE PLAINTIFFS' CLAIMS

This action was commenced by a Complaint dated February 19, 2002, filed in the Superior

Court, which the defendants removed to this Court.  The defendants are only able to discern in the

Complaint two principal causes of action against Detective McMahon and Chief Charamut, namely

a federal claim under 42 U.S.C. § 1983 for false arrest against Detective McMahon and a state law

claim for intentional infliction of emotional distress against both Detective McMahon and Chief

Charamut.[3]  The defendants similarly cannot discern any federal claim beyond false arrest.

These defendants are entitled to summary judgment because, based upon the undisputed

material facts, the plaintiffs cannot demonstrate a violation of their rights.  Furthermore, these

defendants are shielded by the doctrine of qualified immunity and governmental immunity.

Although Counts Three and Six are directed toward the Town of Berlin, the Town is not a

defendant.  In their Answer, the defendants specifically denied that the Town was a defendant.  See

Answer of 5/6/02, Third Count, ¶20; Seventh Count, ¶5 ("the defendants deny that the Town of

Berlin is a defendant to this action.").  The Town is not listed on the case caption, the summons, or

on this Court's PACER filing system.  Therefore, the Third Count and Seventh Count should be

dismissed.

---

[3] The defendants perceive the plaintiffs' Sixth Count to seek recovery on only a theory of intentional infliction of emotional distress, based upon the allegations of "severe emotional distress, mental suffering, anxiety and embarrassment."  Complaint, Sixth Count, ¶2; see also Sixth Count, ¶¶3-4 (repeating emotional distress claims). The defendants cannot discern a libel claim against Chief Charamut, since the only allegations against him are couched in terms of an intentional infliction of emotional distress claim.  Notably absent are any allegations of malice by Chief Charamut, which is an essential element of a libel claim.  Haxhi v. Moss, 25 Conn. App. 16 (1991).  Should the plaintiffs be alleging some other legal theories in the Sixth Count, which is unclear, the defendants wish to challenge those claims also in this motion.  Should the plaintiffs be pursuing such claims, Chief Charamut wishes to raise and brief in a reply memorandum the special defenses of 1) truth; 2) conditional privilege concerning matters of public concern; and 3) absolute immunity.

## III.    LEGAL ARGUMENT

### A.    SUMMARY JUDGMENT IS WARRANTED

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

The Second Circuit has ruled, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."  Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).  Instead, "*the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful.*"  Johnson v. Carpenter Technology Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

There are no genuine issues of fact regarding the plaintiffs' claims against Detective McMahon and Chief Charamut.  The evidence submitted with this Motion establishes that they are entitled to judgment as a matter of law on the Complaint.

### B.     THE PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF 42 U.S.C. §1983

Section 1983 of Title 42 of the United States Code "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States . . . "  Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).  In order to state a claim upon which relief can be granted pursuant to 42 U.S.C. §1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).  In addition, a plaintiff must demonstrate that her injuries were proximately caused by the defendants' violation of law.  See Atkins v. New York City, 143 F.3d 100, 103 (2d Cir. 1998).  Based on the undisputed facts, the plaintiffs cannot establish that they were denied a right, privilege or immunity secured by the Constitution or laws of the United States.

348173

11

**1.    The Plaintiff Kenneth Harrison Cannot Sustain His False Arrest Claim Contained in the First Count**

The plaintiff Kenneth Harrison claims Detective McMahon "unlawfully arrested the plaintiff Kenneth R. Harrison for issuing a bad check, in violation of Conn. Gen. Stat. §53a-128 . . ." Complaint, First Count, ¶8.[4]  Mr. Harrison has also alleged that, due to Detective McMahon's actions, he "was deprived of his rights, privileges and immunities secured to him by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the laws of the United States and the State of Connecticut."  Id., First Count, ¶14.

"False imprisonment, or false arrest, is the unlawful arrest by one person of the physical liberty of another."  Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996) (quoting Green v. Donroe, 186 Conn. 265, 267, 440 A.2d 973 (1982).  A finding of probable cause, however, is a complete defense to an action for false arrest.  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985); Astrada v. Howard, 979 F. Supp. 90, 96 (D. Conn. 1997). "If there existed probable cause at the time of the

---

[4] Connecticut General Statutes §53a-128, Issuing a Bad Check, provides as follows:  "(a) A person is guilty of issuing a bad check when: (1) As a drawer or representative drawer, he issues a check knowing that he or his principal, as the case may be, does not then have sufficient funds with the drawee to cover it, and (A) he intends or believes at the time of issuance that payment will be refused by the drawee upon presentation, and (B) payment is refused by the drawee upon presentation; or (2) he passes a check knowing that the drawer thereof does not then have sufficient funds with the drawee to cover it, and (A) he intends or believes at the time the check is passed that payment will be refused by the drawee upon presentation, and (B) payment is refused by the drawee upon presentation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(c)  Issuing a bad check is:  (1) A class D felony if the amount of the check was more than one thousand dollars."

arrest, the arrest is 'privileged,' and the individual has no constitutional or statutory claim against the officer who made the arrest." Decker v. Campus, 981 F. Supp. 851, 856 (S.D.N.Y. 1997).

The issuance of a warrant by a judge creates a presumption of probable cause. Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991). This presumption can be overcome only by a substantial showing that the officer seeking the warrant "'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause.'" Csoka v. County of Suffolk, 85 F. Supp. 2d 117, 122 (E.D.N.Y. 2000) (quoting Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993)).

A Judge of the Connecticut Superior Court signed the Arrest Warrant Application and specifically found that, "the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the above-named Accused committed it." Arrest Warrant of 3/18/99, at 1. Upon these undisputed facts, Detective McMahon is entitled to summary judgment on qualified immunity grounds because his actions were objectively reasonable at the time they were taken.

Detective McMahon took a signed complaint from Mr. Mihalik, who swore that the Bad Check was refused by his bank and that he had written to Mr. Harrison, via certified mail return receipt requested. Mr. Mihalik Dep. At 53. Mr. Mihalik further swore that restitution had not been

made, because, although Mr. Harrison attempted to make good on the debt with money orders, they were not redeemable because they were not signed.  Id.

Absent a knowing and intentional false statement made with reckless disregard for the truth, the Warrant signed by a neutral magistrate creates a presumption of probable cause and a complete defense to the plaintiff's claim.  Based on these undisputed facts, Detective McMahon is entitled to summary judgment.

> **2.    Because the Charges were Nolled, the Plaintiff Kenneth Harrison Cannot Proceed on his False Arrest Claim.**

In Roesch v. Otarola, the Second Circuit held that in order to prove a constitutional claim for false arrest, the plaintiff must demonstrate that he obtained a favorable outcome of the underlying criminal proceedings that form the basis of the false arrest claim.  Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992).  In short, "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged *must pursue the criminal case to an acquittal or an unqualified dismissal*, or else *waive* his section 1983 claim."  Id. ; see also Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir. 1980) ("Without proof that the criminal prosecution based on probable cause was terminated in defendant's favor, no federal claim exists.")

In Birdsall v. City of Hartford, Judge Underhill of the United States District Court for the District of Connecticut considered the precise question of whether a plaintiff who had obtained a nolle on underlying criminal charges could pursue a claim for false imprisonment.  Birdsall v. City

of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003).  Relying on Roesch, Judge Underhill held

that a nolle is necessarily something less than a favorable resolution of the criminal proceedings

because it leaves open the question of the accused's guilt.   On this fact alone, Judge Underhill

rightly concluded that a section 1983 plaintiff who obtained a nolle could not possibly demonstrate

a favorable resolution of the criminal proceedings sufficient to state a constitutional claim for false

arrest.  Id.  There is, however, a split of authority on this issue in the District of Connecticut.  See

Horton v. Brookfield, 3:98CV01834(JCH), 2001 U.S. Dist. LEXIS 3378 (D. Conn. Mar. 15, 2001)

(jury to consider facts regarding plaintiff's nolle).  Judge Underhill's reasoning is the more

persuasive, and recent, and should be followed by this Court.

Here, because Mr. Harrison obtained a nolle rather than pursuing the criminal case to an

acquittal or unqualified dismissal, he obtained a result less than a favorable termination of the

proceedings, and waived his constitutional claim for false arrest.  See Exhibit J (Record of Court

Action of 7/8/99) ("Nolle"); Exhibit K (Transcript of State v. Harrison, CR 990182036-S of 7/8/99)

(prosecutor entered nolle on record).   For this additional reason, Detective McMahon is entitled to

summary judgment on the false arrest claim.

## C.    DETECTIVE MCMAHON IS ENTITLED TO QUALIFIED IMMUNITY

Even if the plaintiff has stated a claim that his rights were violated, a proposition that

Detective McMahon disputes, he is still entitled to qualified immunity.  The qualified immunity

defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As such, "qualified immunity is an entitlement not to stand trial or face the burdens of litigation." Id. (internal quotations omitted); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "The doctrine protects public officials from personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service. It also safeguards the public interest in having its employees act with independence and without fear of consequences." Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988) (internal quotation and citation omitted).

"Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, ***summary judgment is encouraged as a device for disposing of claims barred by such immunity***." In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996) (emphasis added); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Lee, 136 F.3d at 101; Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992). To establish this defense at the summary judgment stage, "the officers must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts

did not violate those clearly established rights."  <u>Soares v. State of Connecticut</u>, 8 F.3d 917, 920 (2d

Cir. 1993) (internal quotations omitted).  A defendant is entitled to summary judgment when "no

reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences

most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the

defendant to believe that he was acting in a manner that did not clearly violate an established right."

<u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (<u>quoting</u> <u>Robinson v. Via</u>, 821 F.2d 913, 921 (2d

Cir. 1987)).

 The defense of qualified immunity shields a police officer from liability for damages on

account of his performance of discretionary official functions if (a) the officer's actions did not

violate clearly established law, or (b) it was objectively unreasonable for the officer to believe that

his actions did not violate such law.  <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).

Accordingly, the first step in evaluating a qualified immunity defense is to determine whether the

plaintiff has alleged a deprivation of a constitutional right at all.  <u>See</u> <u>Connell</u>, 153 F.3d at 80.  Only

if the plaintiff has sufficiently alleged a constitutional violation is it necessary to determine whether

the officer, or officers of reasonable competence, believed his actions violated plaintiff's rights.

<u>Malloy v. Briggs</u>, 475 U.S. 335, 341 (1986).  "Generally, an officer's actions are considered

objectively unreasonable when no officer of reasonable competence could have made the same

choice in similar circumstances."  <u>Williams v. Lopes</u>, 64 F. Supp. 2d 37 (D. Conn. 1999)

(quotations omitted).  Simply stated, the test for qualified immunity is an objective one.  See <u>Reese</u> <u>v. Garcia</u>, 115 F. Supp. 2d 284, 295 (D. Conn. 2000).

### 1.    <u>Detective McMahon's Conduct was Objectively Reasonable</u>

"The right to be free from arrest or prosecution in the absence of probable cause is a long established right."  <u>Ricciutti v. NYC Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997).  Based upon the undisputed facts, however, Detective McMahon is entitled to summary judgment on qualified immunity grounds because his actions were objectively reasonable at the time they were taken.

In the context of allegations of false arrest, the Second Circuit has stated that:

> [A]n arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively unreasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.

<u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991) <u>cert. denied</u> <u>sub nom.</u> <u>Lillis v.</u> <u>Golino</u>, 505 U.S. 1221 (1992).

"If the officer makes either showing, he is entitled to qualified immunity."  <u>Cook</u>, 41 F.3d at 78.  Moreover, in the context of qualified immunity, the defending officer need only show "arguable" probable cause.  <u>Id.</u>  Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have

348173

reasonably believed that probable cause existed in light of well-established law. Id. (citations and quotations omitted).

In this case, it was objectively reasonable for Detective McMahon to believe he had probable cause to arrest the plaintiff. Detective McMahon took a written complaint from Mr. Mihalik, who presented a check that undisputedly had been returned due to insufficient funds. Mr. Harrison Dep. at 7; Mr. Mihalik Dep. at 53. Detective McMahon was also presented with evidence that Mr. Harrison had received written notice regarding the Bad Check, in compliance with the notice requirement of Connecticut General Statutes §53a-128. Mr. Harrison Dep. at 7; Mr. Mihalik Dep. at 53. Moreover, Detective McMahon was presented with evidence that, although Mr. Harrison had attempted to make restitution by way of money orders, restitution was not made because Mr. Mihalik could not cash or deposit the money orders, which were unsigned. Mr. Harrison Dep. at 9; Mrs. Mihalik Dep. at 54, 59-60. Detective McMahon even included the disputed money orders with the Arrest Warrant Application. McMahon Aff., ¶11.

Based upon these undisputed facts, reasonable officers could easily conclude that it was appropriate to present this information to a neutral magistrate, to see if a Judge would agree and decide that there was probable cause for an arrest warrant to issue. At the very least, reasonable officers could disagree about how to proceed. A Judge of the Connecticut Superior Court agreed with Detective McMahon and made a specific finding of probable cause. Exhibit G (Arrest

Warrant).  Therefore, based on these undisputed facts, Detective McMahon is entitled to qualified

immunity and summary judgment on the plaintiffs' Complaint.

### D.    THE TOWN OF BERLIN CANNOT BE HELD LIABLE UNDER 42 U.S.C. §1983 BASED UPON RESPONDEAT SUPERIOR

Even if the Town of Berlin was a defendant, a proposition that the defendants dispute, it

could not be held liable in this action.  A municipality may not be held liable under 42 U.S.C §1983

for actions of its employees based upon the theory of respondeat superior.  Monell v. Dep't of

Social Services, 436 U.S. 658, 694 (1978); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.

1995).  Rather, "[i]n order to establish municipal liability for unconstitutional acts by municipal

employees, a plaintiff must show that the violation of [her] constitutional rights resulted from a

municipal policy, custom or practice."  Johnson v. City of New York, 940 F. Supp. 631, 638

(S.D.N.Y. 1996).

The principle that a municipality cannot be held vicariously liable under §1983 merely by

virtue of its status as the employer of an alleged wrongdoer, is firmly established.  See Fox v.

Doran, 974 F. Supp. 276, 282-83 (S.D.N.Y. 1997) aff'd 152 F.3d 918 (2d Cir. 1998) (granting

municipality's summary judgment motion on basis that the plaintiff failed to show any officially

adopted policy or custom that caused his termination of employment); Garg v. Albany Indus.

Development Agency, 899 F. Supp. 961, 968-69 (N.D.N.Y. 1995) aff'd 104 F.3d 351 (2d Cir. 1996)

(granting defendant's motion to dismiss or for summary judgment); Velaire v. City of Schenectady,

862 F. Supp. 774, 781 (N.D.N.Y. 1994) (granting municipality's motion for summary judgment because plaintiff failed to show that municipality itself was wrongdoer).   Therefore, summary judgment should enter against the plaintiffs on the Third and Seventh Counts of the Complaint.

### E.    THE PLAINTIFFS' STATE LAW CLAIMS SHOULD BE REJECTED BECAUSE THEY ARE DERIVATIVE OF THEIR LEGALLY INSUFFICIENT FEDERAL CIVIL RIGHTS CLAIM

Should this Court find that the plaintiffs have failed to establish the requisite elements of their federal claim, the jurisdictional basis for the plaintiffs' pendent state claim will disappear. Where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claim is legally insufficient.  See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997); Lennon, 66 F.3d at 426 ("Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution"); A. Aiudi & Sons v. Plainville, 862 F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject matter jurisdiction over state law claims); see also Esposito v. Buonome, 647 F. Supp. 580 (1986) (dismissing pendent state law claims on the basis of possible jury confusion).

Both Mr. Harrison and Mrs. Harrison's state law claims for intentional infliction of emotional distress arose from the same factual scenario as Mr. Harrison's federal claim.  See

Complaint, Second Count and Sixth Count.  Accordingly, should the court grant summary judgment

on the plaintiff's federal law claim, the court would lack subject matter jurisdiction over the

plaintiff's state law claim, requiring its dismissal.  See Monsky, 127 F. 3d. at 247; Lennon, 66 F.3d

at 426; A. Aiudi & Sons, 862 F. Supp. at 745.  Even if the court were to retain jurisdiction over the

state law claim, Detective McMahon and Chief Charamut are entitled to summary judgment for the

following reasons.

### 1.     The Plaintiffs Cannot Prevail on Their Intentional Infliction of Emotional Distress Claim

In order to prevail on the intentional infliction of emotional distress claim, the plaintiff must

allege, and ultimately prove: "'(1) that the actor intended to inflict emotional distress; or that he

knew or should have known that emotional distress was a likely result of his conduct; (2) that the

conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the

plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'"

Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986) (quoting Hiers v. Cohen, 31 Conn.

Supp. 305, 329 A.2d 609 (1973)); Vorvis v. Southern New England Telephone Co., 821 F. Supp.

851, 855 (D. Conn. 1993).

Further, "liability for intentional infliction of emotional distress requires conduct exceeding

all bounds usually tolerated by decent society, of a nature which is especially calculated to cause,

and does cause, mental distress of a very serious kind."  DeLaurentis v. New Haven, 220 Conn. 225,

348173

267, 597 A.2d 807 (1991);  Rennie v. Glass, Molders, Pottery Plastics & Allied Workers International Union, AFL-CIO, 38 F. Supp. 2d 209 (D. Conn. 1999).

Only where reasonable minds could differ on whether the conduct is "extreme and outrageous" does it become a question for the jury.  Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986); Johnson, 918 F. Supp. at 552; Ziobro v. Connecticut Institute for the Blind, 818 F. Supp. 497, 502 (D. Conn. 1993).  Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.  Huff, 10 F. Supp. 2d at 122.  The plaintiff must allege and prove "conduct considerably more egregious than that experienced in the rough and tumble of everyday life."  Whelan v. Whelan, 41 Conn. Supp. 519, 522 (1991).  The standard in Connecticut, which is to demonstrate "extreme and outrageous conduct," is stringent.  Huff, 10 F. Supp. 2d at 122.  Thus, to be actionable the conduct must be found to be "exceeding all bounds usually tolerated by decent society, of a nature."  Mellay v. Eastman Kodak Co., 42 Conn. Supp. 17, 19-20 (1991).

The plaintiffs have alleged nothing that comes close to being extreme or outrageous behavior by Detective McMahon or Chief Charamut.  In fact, the defendants were simply fulfilling their duty to enforce the laws of the State of Connecticut.  Mrs. Harrison, in attempting to have the Arrest Warrant against her husband summarily vacated, went beyond the role of a caring spouse and sought to improperly assert her authority as a police detective.  Chief Charamut appropriately

348173

23

reported to Mrs. Harrison's superior officer the incident that occurred on March 30, 1999, at the Berlin Police Department.  Mrs. Harrison had already informed her colleagues and supervisors about the situation.  Mrs. Harrison Dep. at 62.  Her colleagues at the Naugatuck Police Department allegedly had unkind things to say about Detective McMahon, so it should have come as no surprise when word of this incident was relayed to Mrs. Harrison's Police Chief.  Moreover, conduct that is "distressing and hurtful to the plaintiff" is not necessarily extreme and outrageous.  Appleton v. Board of Educ., 254 Conn. 205, 211 (2000).  As a matter of law, therefore, the plaintiffs cannot establish a claim for intentional infliction of emotional distress and the defendants are entitled to summary judgment.

IV.    **CONCLUSION**

Whether the plaintiff actually committed the offense for which he was charged is immaterial.[5]  Mr. Harrison's arrest was preceded by a written citizen complaint, which lead to a warrant that established there was probable cause to believe that the plaintiff had committed the offenses with which he was charged.  Detective McMahon secured a warrant, signed by a neutral magistrate, which creates a heavy burden and a presumption of probable cause that the plaintiffs simply cannot overcome in this case.  Without more, the plaintiffs cannot sustain their claims.

WHEREFORE, Detective McMahon and Chief Charamut respectfully request that the Court grant their Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,
DEFENDANTS,
SEAN MCMAHON and GERALD R. CHARAMUT


By:_____
        JAMES N. TALLBERG, ESQ.
        Federal Bar Number Ct17849
        UPDIKE, KELLY & SPELLACY, P.C.
        One State St., P.O. Box 231277
        Hartford, CT 06123-1277
        Tel. No. (860) 548-2600

---

[5] See Illinois, 462 U.S. at 245 n.13 ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity").

348173

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY that a copy of the foregoing has been sent via U.S. certified mailed,

postage prepaid, this ___ day of January 2004, to the following counsel of record:

Robert O. Wynne, Esq.
Gould, Killian & Wynne
280 Trumbull Street
Hartford, CT 06103

Paul W. Smith, Esq.
36 Main Street
P.O. Box 338
Windsor Locks, CT 06096

By:_____
        JAMES N. TALLBERG, ESQ.
        Updike, Kelly & Spellacy, P.C.

348173

26