UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH HARRISON, LAURA HARRISON and D & L AUTO BODY & TOWING, INC. | : : : : : | CIVIL ACTION NO. 3:02CV477(AVC) |
| Plaintiffs, | : : : | |
| v. | : : | |
| SEAN MCMAHON, GERALD R. CHARAMUT, JOHN MIHALIK, and JULIE MIHALIK | : : : : : | |
| Defendant. | : : | JANUARY 30, 2004 |

**LOCAL RULE 56c)(1) STATEMENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(c) of the Local Rules of Civil Procedure, the defendants Sean McMahon and Gerald Charamut respectfully offer the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1. At all times relevant to the complaint in this action, defendant Sean McMahon was a member of the Berlin Police Department acting in his capacity as a member of said Department. Complaint, ¶2; Answer, ¶2.

2. At all times relevant to the complaint in this action, defendant Gerald Charamut was the Police Chief of the Town of Berlin acting in his capacity as a member of said Department. Complaint, ¶3; Answer, ¶3.

348174

3. At all times relevant to the complaint in this action, defendant Kenneth Harrison was a principal of D & L Auto Body & Towing Co., Inc. Deposition of Kenneth Harrison of 8/8/03 ("Mr. Harrison Dep.") at 57.

4. At all times relevant to the complaint in this action, plaintiff Laura Harrison was a member of the Naugatuck Police Department. Deposition of Laura Harrison of 8/8/03 ("Mrs. Harrison Dep.") at 6.

5. By instrument dated January 28, 1999, Mr. Harrison signed and passed a check in the amount of $2,640.00, payable to defendant John Mihalik (the "Bad Check"). Mr. Harrison Dep. at 7.

6. A copy of the Check is attached to the defendants' Motion for Summary Judgment as Exhibit A. Id. at 6-8.

7. Defendant Julie Mihalik deposited the Check in an account at Enfield Community Federal Credit Union. Deposition of John Mihalik of 8/7/03 ("Mr. Mihalik Dep.") at 32.

8. The Check was returned to Mrs. Mihalik due to insufficient funds. Mr. Harrison Dep. at 7.

9. On or about February 9 or 10, 1999, Mr. Mihalik complained to the Berlin Police Department about the Bad Check. Mr. Harrison's Dep. at 16.

10. Detective Manning of the Berlin Police Department called Mr. Harrison and discussed the Bad Check with him. Id.

11. By certified letter dated February 11, 1999, Mr. Mihalik informed Mr. Harrison that the Bad Check had been returned due to insufficient funds. Id. at 7.

12. A copy of the Mihalik letter dated February 11, 1999 is attached to the defendants' Motion for Summary Judgment as Exhibit B. Id. at 7.

13. Mr. Harrison received the Mihalik letter regarding the Bad Check and signed the certified return receipt. Id. at 7.

14. On or about February 14, 1999, Mr. Harrison obtained Western Union money orders totaling $2,640.00 (the "Money Orders"). Id. at 11.

15. Copies of the Money Orders are attached to the defendants' Motion for Summary Judgment as Exhibit E. Id. at 11.

16. Mr. Harrison gave the Money Orders to the Mihaliks. Id. at 9.

17. Mr. Harrison never signed the Money Orders. Id. at 9.

18. Mrs. Mihalik attempted to deposit the Money Orders at her credit union. Deposition of Julie Mihalik of 8/7/03 ("Mrs. Mihalik Dep.") at 54, 59-60.

19. When initially presented, the credit union would not deposit or cash the Money Orders because they were not signed. Id. at 54.

20. Mr. Mihalik complained to members of the Berlin Police Department regarding Mr. Harrison's failure to make restitution for the Bad Check that had been returned due to insufficient funds. Mr. Mihalik Dep. at 53.

21. On February 22, 1999, Mr. Mihalik appeared at the Berlin Police Department and requested that Mr. Harrison be arrested for failing to make restitution for the Bad Check. Mr. Mihalik Dep. at 53.

22.     On February 22, 1999, Mr. Mihalik signed an affidavit in support of an Arrest Warrant Application (the "Arrest Warrant Application") regarding the Bad Check.  Mr. Mihalik Dep. at 53.

23.     A copy of the Arrest Warrant Application is attached to the defendants' Motion for Summary Judgment as Exhibit G.   Mr. Mihalik Dep. at 53; Affidavit of Sean McMahon of 1/30/04, ¶11.

24.     Detective McMahon forwarded the Affidavit, along with a copy of the Bad Check, the letter from Mr. Mihalik received by Mr. Harrison on February 11, 19099 regarding the Bad Check, and the Money Orders, to the Superior Court, G.A. 15.  McMahon Aff., ¶11.

25.     On March 17, 1999, Assistant State's Attorney Carl Taylor signed the Arrest Warrant Application.  Id., ¶12.

26.     On March 18, 1999, a Judge of the Connecticut Superior Court signed the Warrant for Mr. Harrison's arrest for violating Connecticut General Statutes §53a-128.  Id.

27.     On March 19, 1999, the Berlin Police Department sent a letter to Mr. Harrison informing him of the existence of the Arrest Warrant.  Mr. Harrison Dep. at 26.

28.     On or about March 25, 1999, Mr. Harrison contacted Detective McMahon and the two discussed the Arrest Warrant.  Id.

29.     During that conversation, Detective McMahon informed Mr. Harrison that he would hold the Warrant, and would delay serving it, in order to give Mr. Harrison time to resolve the dispute with Mr. Mihalik.  Mr. Harrison Dep. at 27-29.

30.     Mr. Harrison thanked Sean McMahon for agreeing to hold warrant.  Id. at 28-29.

31. On March 25, 1999, Mrs. Harrison visited the Berlin Police Department and discussed the Arrest Warrant with Detective McMahon. Mrs. Harrison Dep. at 25-26.

32. During that conversation, Mrs. Harrison asked Detective McMahon to have the Arrest Warrant vacated. Id. at 33.

33. Mrs. Harrison also informed Detective McMahon that she was a police detective and she gave him her business card. Id. at 30.

34. Mrs. Harrison said words to the effect of "maybe I can get it vacated, if we make good," on the debt that was owed. Id. at 38.

35. Mrs. Harrison also told Detective McMahon that she would make restitution in a Naugatuck Police Department envelope. Id. at 48.

36. On March 30, 1999, Mr. and Mrs. Harrison visited the Berlin Police Department together. Id. at 42-43.

37. During this visit, Detective McMahon and Mrs. Harrison exchanged words in the lobby of the Berlin Police Department. Id. at 57.

38. Mrs. Harrison became angry because Detective McMahon would not vacate the Arrest Warrant. Id. at 59.

39. Although they exchanged words, Mrs. Harrison never feared a physical confrontation with Detective McMahon. Id. at 58.

40. Mr. Harrison did not hear any shouting or profanity. Mr. Harrison Dep. at 45-46.

41. On March 30, 1999, Mr. Harrison was processed at the Berlin Police Department on the Arrest Warrant by Berlin Police Officer Calderone. Id. at 50.

42. Mr. Harrison was not handcuffed, nor was he searched, except to empty his pockets. Id. at 51.

43. Mr. Harrison was not verbally abused, nor was he physically abused in any way. Id. at 52.

44. Mr. Harrison was released on a promise to appear and was not required to post any form of bond. Id. at 51.

45. The entire incident at the Police Department did not take more than approximately 45 minutes. Id. at 52.

46. The charges against Mr. Harrison were later dismissed after the entry of a nolle. Exhibit J (Record of Court Action of 7/8/99); Exhibit K (transcript of State v. Harrison, CR 990182036-S of 7/8/99) at 2-3.

47. On April 6, 1999, Police Chief Charamut sent a letter to Edward Clisham, Police Chief of the Borough of Naugatuck and enclosed a memorandum from Detective McMahon dated April 2, 1999. Affidavit of Gerald Charamut of 1/30/04, ¶6.

48. A copy of Police Chief Charamut's April 6, 1999 letter is attached to Chief Charamut's affidavit, which is Exhibit L to the defendants' Motion for Summary Judgment. Id.

49. Mrs. Harrison was not disciplined as a result of Police Chief Charamut's letter, nor did she lose any pay. Mrs. Harrison Dep. at 63.

50. Police Chief Charamut's letter has not interfered with Mrs. Harrison's career as a police officer. Id. at 65.

51. Since the time of this incident, Mrs. Harrison has been promoted from Detective to Sergeant. Id.

52. In Mrs. Harrison's job as a police officer, there are lot of jokes told on the job and a lot of locker room banter. Id. at 58.

53. Mrs. Harrison was ribbed by her fellow employees regarding this incident. In her words, she "heard crap about it for months afterwards." Id. at 54.

54. Prior to Police Chief Charamut sending his April 6, 1999 letter to Police Chief Clisham, Mrs. Harrison had already told members of her department about the Arrest Warrant involving her husband. Id. at 62.

55. Mrs. Harrison told Detective McMahon that her colleagues on the Naugatuck Police Department didn't think he knew what the hell he was doing. Id.

56. It's possible that Mrs. Harrison told Detective McMahon to go ahead and tell her Police Chief about her actions concerning the Arrest Warrant. Id.

57. Neither Mr. Harrison nor Mrs. Harrison has suffered from nightmares or sought psychiatric treatment resulting from the alleged emotional distress they claim was caused by this incident. Mr. Harrison Dep. at 71-73; Mrs. Harrison Dep. at 68.

58. Neither Mr. nor Mrs. Harrison suffered from stomach problems or required any medication resulting from the alleged emotional distress they claim was caused by this incident. Mr. Harrison Dep. at 71, 68; Mrs. Harrison Dep. at 68.

59. Mr. Harrison has been towing cars on the rotation list for the Berlin Police Department for the past four years. Mr. Harrison Dep. at 71.

60. Mr. Harrison has admitted that, "this incident could have been avoided if [his] check hadn't bounced." Mr. Harrison Dep. at 49.

>	RESPECTFULLY SUBMITTED,
>	DEFENDANTS,
>	SEAN MCMAHON and GERALD R. CHARAMUT
>
>
>	By:_____
>	    JAMES N. TALLBERG, ESQ.
>	    Federal Bar Number Ct17849
>	    UPDIKE, KELLY & SPELLACY, P.C.
>	    One State St., P.O. Box 231277
>	    Hartford, CT 06123-1277
>	    Tel. No. (860) 548-2600

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing, Motion for Extension of Scheduling Order, has been sent via U.S. certified mailed, postage prepaid, this ___ day of January 2004, to the following counsel of record:

Robert O. Wynne, Esq.
Gould, Killian & Wynne
280 Trumbull Street
Hartford, CT 06103

Paul W. Smith, Esq.
36 Main Street
P.O. Box 338
Windsor Locks, CT 06096


By:_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.