UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH HARRISON, LAURA HARRISON and D&L AUTO BODY & TOWING, INC. | : | CIVIL ACTION NO. 3:02CV477 (AVC) |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| SEAN MCMAHON, GERALD R. CHARAMUT, JOHN MIHALICK and JULIE MIHALICK | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | APRIL 12, 2004 |

MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' JOHN MIHALICK
AND JULIE MIHALICK'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs, KENNETH HARRISON, LAURA HARRISON and D&L AUTOBODY & TOWING, INC. (hereinafter referred to collectively as "Plaintiffs"), hereby object to Defendants', JOHN MIHALICK and JULIE MIHALICK'S (hereinafter referred to collectively as "Defendants"), Motion for Summary Judgment and offer this memorandum of law in support of their objection.

I.      INTRODUCTION

The present action arises from the issuance of an arrest warrant and subsequent

arrest of Plaintiff Kenneth Harrison for a felony charge of issuing a bad check. The action was originally commenced by writ, summons and complaint dated February 19, 2002 in the Superior Court of Connecticut, Judicial District of Hartford. Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1441, the action was removed to this Court by co-defendants Sean McMahon and Gerald Charamut.

The Complaint sets forth the following causes of action as to Defendants John and Julie Mihalick: malicious prosecution as to John Mihalick and Julie Mihalick (Fourth Count); intentional infliction of emotional distress as to John Mihalick and Julie Mihalick (Fifth Count); and tortuous interference with a business relationship as to John Mihalick and Julie Mihalick.  Defendants have moved for summary judgment on the Fourth and Fifth Counts only.

In relation to the malicious prosecution claims, Defendants contend that based on the undisputed facts Mr. Harrison cannot show that Defendants acted without probable cause in initiating and procuring the institution of the criminal proceedings against him. Specifically, Defendants argue that they had probable cause to believe Mr. Harrison acted in violation of the law when a check he had provided bounced and they were subsequently unable to negotiate the money orders Mr. Harrison gave them as restitution for the bounced check.

Despite Defendants' contentions, a material issue of fact exists as to whether or not Defendants had probable cause to initiate and procure an arrest warrant and criminal charges against Mr. Harrision.  Mr. Harrison asserts that when he provided the original check he expressly informed Mr. Mihalick that he did not have sufficient funds to cover the check and that he would have to wait a week before depositing it.  Therefore, Mr. Harrison could not have had the int ent to defraud when drawing the check.  Mr. Harrison also contends that the Defendants' claims that he did not make restitution for the bounced check were false.

In relation to the intentional infliction of emotional distress claims, Defendants contend that their conduct cannot, as a matter of law, be deemed outrageous, and therefore they are entitled to summary judgment.  Plaintiffs argue that there are disputed issues of fact and that a reasonable jury could conclude that Defendants' conduct was outrageous.

## II.    <u>FACTS</u>

At all times relevant hereto, Kenneth Harrison was the owner and operator of D&L Autobody & Towing (hereinafter "D&L"), a tractor-trailer car carrier business.  Deposition of Kenneth Harrison of 8/8/03 ("K. Harrison Dep.") at 57-61, attached as Exhibit A.  In January of 1999, Mr. Harrison employed co-defendant John Mihalick as an independent

contractor to haul cars for D&L.  Id. at 92.  The agreement reached was that Mr. Mihalick would be paid on a monthly basis for hauling cars.  Id. at 10.  After working for Mr. Harrison for only two weeks, Mr. Mihalick informed him that he needed money.  Ibid.  On January 28, 1999, Mr. Harrison gave Mr. Mihalick a check for $2,640 for car transport services rendered by Mr. Mihalick to D&L.  Ibid.  When he provided the check, Mr. Harrison told Mr. Mihalick to hold the check for a week before depositing it, as he was waiting for a deposit to clear.  Id. at 10 & 113.  Despite these instructions, on the same day, Julie Mihalick, the secretary and bookkeeper for Mr. Mihalick's business, deposited the check at Enfield Community Federal Credit Union. Deposition of Julie Mihalick of 8/7/03 ("Julie Mihalick Dep.") at 8 & 16, attached as Exhibit B.   The check was returned due to insufficient funds (hereinafter "the Bounced Check").  Id. at 18.

On or about February 9 or 10, 1999 Mr. Mihalick contacted the Berlin Police Department about the Bounced Check. K. Harrison Dep. at 16.  Personnel from the Berlin Police Department informed the Mihalicks that in order to prosecute Mr. Harrison on a bad check charge they had to give him notice.   Julie Mihalick Dep. at 48.  In addition, Mr. Mihalick spoke to Mr. Harrison's principal, Subaru, and told them that Mr. Harrison had bounced a check and that he was holding their cars hostage until he made good on the check and that he was having Mr. Harrison arrested.  K. Harrison Dep. at 75.  On the

same day, Detective Manning from the Berlin Police Department contacted Mr. Harrison and informed him of Mr. Mihalick's complaint concerning the Bounced Check.  K. Harrison Dep. at 16.    By certified letter ("the Certified Letter"), Mr. Mihalick notified Mr. Harrison of the Bounced Check and informed him that if it was not taken care of within eight days, they would be going through the legal channels to get it resolved.  Id. at 7.  Mr. Harrison received the letter on February 11, 1999.  Id. at 21.

Mr. Harrison spoke to the Mihalicks and informed them he would provide them with money orders for the Bounced Check.  Id. at 19.  On or about February 14, 1999, Mr. Harrison used cash to purchase $2,640.00 worth of Western Union money orders ("the Money Orders") from Stop and Shop on Jordan Lane Road in Wethersfield, Connecticut. K. Harrison Dep. at 8; a copy of the Money Orders is attached as Exhibit C.  Mr. Harrison gave the Money Orders to Mr. Mihalick the same day.  K. Harrison Dep. at 11.  Mr. Harrison did not sign the Money Orders.  Ibid.  When using money orders in the past, Mr. Harrison never had to sign them, and he was not informed that these Money Orders needed to be signed.  Id. at 11-12.

Mrs. Mihalick attempted to cash the money orders at Enfield Community Federal Credit Union.  Julie Mihalick Dep. At 53.  Mrs. Mihalick claims the bank refused to cash the Money Orders because they were not signed.  Id. at 54.

On February 22, 1999, Mr. Mihalick appeared at the Berlin Police Department, lodged a complaint against Mr. Harrison and signed an affidavit in support of an Arrest Warrant Application (hereinafter "the Arrest Warrant Application"). Deposition of John Mihalick of 8/7/03 ("John Mihalick Dep.") at 53, attached as Exhibit D; the Arrest Warrant Application is attached as Exhibit E. The affidavit signed by Mr. Mihalick states that "no restitution has been made." Exhibit E. Detective Sean McMahon submitted the Arrest Warrant Application, his incident report, a copy of the Bounced Check, and the Certified Letter to the Superior Court, G.A. 15. Deposition of Sean McMahon of 8/7/03 ("McMahon Dep.") at 37-40, attached as Exhibit F; a copy of Detective McMahon's incident report is attached as Exhibit G; a copy of the Bounced Check is attached as Exhibit H; a copy of the Certified Letter is attached as Exhibit I. Mr. Mihalick also stated to Detective McMahon that he wanted Mr. Harrison arrested. Exhibit G. On March 17, 1999, Assistant State's Attorney Carl Taylor signed the Arrest Warrant, which was subsequently signed by a judge of the Connecticut Superior Court, Geographical Area 15 on March 18, 1999. Exhibit E.

Sometime after March 19, 1999, Mr. Harrison received a letter from the Berlin Police Department informing him of the arrest warrant. K. Harrison Dep. at 24. Mr. Harrison contacted Detective McMahon concerning the warrant. Id. at 26. Detective McMahon told Mr. Harrison that he knew restitution had been made, but that Mr. Mihalick

said he could not cash the Money Orders because they were not signed.  <u>Id</u>. at 27.  Mr. Harrison indicated he did not want to be arrested, and Detective McMahon stated he would delay serving the warrant while Mr. Harrison attempted to resolve the dispute with the Mihalicks.  <u>Id</u>. at 27-28.  Detective McMahon suggested that Mr. Harrison obtain new money orders.  <u>Id</u>. at 28.

After his conversation with Detective McMahon, Mr. Harrison discussed the issue of the arrest warrant with his wife, Laura Harrison, who was a detective with the Naugatuck Police Department.  <u>Id</u>. at 30.   Detective Harrison was concerned that despite Detective McMahon's promise to delay serving the warrant, it would still be served and that Mr. Harrison may get picked up on the warrant.  Deposition of Laura Harrison of 8/8/03 ("L. Harrison Dep.") at 24-28, attached as Exhibit J.  On March 25, 2003, Detective Harrison visited the Berlin Police Department and discussed the arrest warrant with Detective McMahon.  <u>Id</u>. at 25-26.  At the conclusion of the meeting, Detective Harrison understood that the warrant would be resolved by Mr. Harrison obtaining new money orders to give to the Mihalicks.  <u>Id</u>. at 41.  Detective McMahon told Detective Harrison that if Mr. Harrison showed that he had made restitution, he would have the warrant vacated.  McMahon Dep. at 70.

The next day, Detective Harrison contacted Western Union to ascertain how to void

the Money Orders and whether or not they were good without a signature. Ibid. Western Union informed Detective Harrison that the Money Orders were valid without a signature. Id. at 43. Western Union provided Detective Harrison with a letter verifying that the Money Orders were valid without a signature. Id. at 45-46; a copy of the letter from First Data Corp. dated March 29, 1999 is attached as Exhibit K.

In the afternoon of March 30, 1999, Mr. Harrison and Detective Harrison went to the Berlin Police Department together with the intent of showing Detective McMahon the letter from Western Union. Id. at 41-42. Detective Harrison informed Detective McMahon that she had a letter from Western Union confirming that the Money Orders were valid. L. Harrison Dep. at 52. Detective McMahon refused to consider the letter and instead arrested Mr. Harrison. Id. at 53; K. Harrison Dep. at 45-46.

The Mihalick's bank did in fact accept the Money Orders for deposit. John Mihalick Dep. at 76; Julie Mihalick Dep. at 54 & 64. Mr. Harrison never signed the Money Orders prior to the Mihalick's depositing them. Affidavit of Ken Harrison of 4/8/04, ¶ 9 attached as Exhibit L. The State's Attorney's Office determined that the Money Orders were valid when they were given to the Mihalick's by Mr. Harrison on February 14, 1999. Letter from Anthony Duarte to Mr. Mihalick dated June 15, 1998 (sic) attached as Exhibit M.

The charges against Mr. Harrison resulted in the entry of a dismissal. State v.

Harrison.    Transcript of State v. Harrison, CR 990182036-S, July 8, 1999 attached as Exhibit N.

### III.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Astrada v. Howard, 979 F.Supp. 90, 93 (D. Conn. 1997).  The moving party bears the burden of showing that no genuine issue of material facts exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in the light most favorable to the non-moving party.  Bryant v. Maffucci 923 F.2d 979, 982 (2.d Cir. 1991).  Even if the court believes that the non-moving party is unlikely to prevail at trial, summary judgment is not warranted if an issue of fact remains.  Jobson v. Henne, 355 F.2d 129,133 (2.d Cir. 1966).

### B.    THE MIHALICKS ACTED WITHOUT PROBABLE CAUSE IN INITIATING CRIMINAL CHARGES AGAINST MR. HARRISON

The Mihalicks initiated and procured criminal charges against Mr. Harrison without probable cause. To state a cause of action for malicious prosecution, a plaintiff must establish the following elements: (1) the defendant initiated or procured the institution of

criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. McHale v. W.B.S. Corp., 187 Conn. 444, 446 A.2d 815, 817 (1982). The only issue raised by Defendants' motion for summary judgment relates to the third element (i.e that Defendants acted without probable cause).   As set forth below, genuine issues of material fact exist regarding whether or not Defendants acted without probable cause in procuring the arrest of and criminal charges against Mr. Harrison, and therefore Defendants' motion for summary judgment should be denied.

In relation to a malicious prosecution action, probable cause is "knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting the action."   Vandersluis v. Weil, 176 Conn. 533, 356, 407 A.2d 982, 985 (1978) (citations omitted).   Moreover, probable cause must exist as to each and every element of the charged offense. State v. Heinz, 193 Conn. 612, 617, 480 A.2d 452, 456 (1984).   "In the context of a [malicious prosecution suit], the defendant lacks probable cause if he lacks A reasonable, good faith belief in the facts alleged and the validity of the claim asserted."   DeLaurentis v. New Haven, 220 Conn. 225, 256, 597 A.2d 807, 823

(1991).[1]

There are three essential elements to the crime of issuing a bad check under Conn.Gen.Stat. § 53a-128 : (1) the drawing of a check on a bank or other depositary for payment of money; (2) knowledge at the time of drawing the check that the drawer has not sufficient funds in, or credit with, the bank or depositary to meet the check in full upon presentation; and (2) intent to defraud.  State v. Callahan, 1 Conn.Cir.Ct. 247, 250, 23 Conn.Supp. 374, 377, 183 A.2d 861, 863 (1962); State v. Sills, 2 Conn.Cir.Ct. 349, 352, 199 A.2d 186, 187 (1963).[2]

In this case, the Mihalicks did not have a reasonable, good faith belief that Mr. Harrison intended to defraud them.  When Mr. Harrison provided the check he expressly instructed Mr. Mihalik not to deposit the check for a week, as he had a check to deposit that would need to clear his account.  K. Harrison Dep. at 10 & 113.  On the same day that Mr. Harrison provided the check in question to Mr. Mihalick he made a deposit that would have covered the check.  Id. at 114-115.  Despite Mr. Harrison's instructions, Mrs. Mihalick deposited the check on the same day, and it was subsequently returned due to insufficient

---

[1] Although the court in Delaurentis was referring to a vexatious suit, the court expressly held that the principles are the same in a malicious prosecution suit.  DeLaurentis, 220 Conn. at 238; See also Vandersluis, 176 at 366 ("A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint.")

[2] Both of the cited cases were addressing the elements of issuing a bad check under Conn.Gen.Stat. § 53-361, which has subsequently been repealed and replaced by Conn.Gen.Stat. § 53a-128, the statute at issue in this case. The substantive elements are the same under either version of the statute.

funds.    Julie Mihalick Dep. at 8 & 16.    Given Mr. Harrison's express communications regarding depositing the check, the Mihalicks lacked a reasonable believe that Mr. Harrison intended to defraud them when they reported the Bounced Check to the Berlin Police on February 9th or 10th.

In addition, Mr. Mihalick did not have probable cause to believe Mr. Harrison intended to defraud him when he signed the affidavit in support of the arrest warrant application on February 22, 1999.  After learning of the Bounced Check and receiving the letter from the Mihalicks regarding the same, Mr. Harrison used cash to purchase Western Union money orders equaling the amount of the Bounced Check.  K. Harrison Dep. at 8. On February 14, 1999 Mr. Harrison met with the Mihalicks at the East Windsor diner and gave them the Money Orders.  Id. at 19.

Mrs. Mihalick attempted to cash the Money Orders at Enfield Community Federal Credit Union.  Julie Mihalick Dep. at 53.  Mrs. Mihalick claims the bank refused to cash the Money Orders because they were not signed, yet she did not endorse the Money Orders. Id. at 54; Exhibit C.   However, the Mihalicks' eventually deposited the Money Orders without Mr. Harrison's signature with the same bank and they cleared their account.  Id. at 17.

On February 22, 1999, Mr. Mihalick appeared at the Berlin Police Department,

lodged a complaint against Mr. Harrison and signed an affidavit in support of the Arrest Warrant Application.  John Mihalick Dep. at 53; Exhibit E.  The affidavit signed by Mr. Mihalick states that "no restitution has been made."  Exhibit E.

Given that Mr. Harrison had provided the Mihalicks with the Money Orders, Mr. Mihalick could not have had a reasonable belief that Mr. Harrison intended to defraud him when he signed the affidavit in support of the arrest warrant.  It is more likely that because the Mihalicks were unable to obtain cash from their bank for the Money Orders, they acted with malice to retaliate against Mr. Harrison, as is evidenced by their communications to Subaru and in waiting four months to deposit the Money Orders while claiming they were invalid.  Whether or not restitution had been made for the Bounced Check was critical to issue of probable cause, as is evidenced by the standardized arrest warrant application's inclusion of the statement that "no restitution has been made." Exhibit E.  In signing the affidavit that recited "no restitution has been made," Mr. Mihalick made a false statement that was necessary to support probable cause.

A reasonable jury could find that the Mihalicks lacked probable cause to procure the arrest and prosecution of Mr. Harrison, and therefore Defendants' motion for summary judgment should be denied.

**C.**     **A REASONABLE JURY COULD FIND THAT THE DEFENDANTS' CONDUCT WAS EXTREME AND OUTRAGEOUS**

A genuine issue of fact exists as to whether Defendants' conduct was sufficiently extreme and outrageous.   A claim for intentional infliction of emotional distress requires proof of the following elements:  (1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.   In this case, Defendants contend that the undisputed facts establish that no reasonable jury could find that their conduct was extreme and outrageous.[3]  However, there are a number of disputed facts that, if viewed in the light most favorable to Plaintiffs, indicate that a reasonable jury could find that the Defendants' conduct was extreme and outrageous.

"Summary judgment is inappropriate for issues involving motive, intent and subjective feelings."  United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376, 260 A.2d 596, 603 (1969).  Furthermore, a number of Connecticut courts have held that whether or not conduct was extreme and outrageous is a genuine issue of

---

[3] Defendants' motion for summary judgment and memorandum of law in support thereof only raises the second element (i.e. that their conduct was extreme and outrageous).  Therefore, Plaintiffs have only addressed the second element in their memorandum of law.

material fact for the jury.  *See, e.g.* Gilman v. Gilman, 46 Conn.Supp. 21, 23, 736 A.2d 199, 200 (1999); Brown v. Ellis, 40 Conn.Supp. 165, 167-168, 484 A.2d 944, 946 (1984).

In this case, Defendants' had a business relationship with Mr. Harrison.  Even though the agreement between the parties provided that Mr. Mihalick would be paid on a monthly basis, Mr. Harrison agreed to pay Mr. Mihalick early because he claimed he needed the money.  K. Harrison Dep. at10.  However, Mr. Harrison expressly instructed Mr. Mihalick not to deposit the check because he had to wait for a deposit to clear.  Id. at 10 & 113.  Despite these instructions, the Mihalicks deposited the check the same day.  Julie Mihalick Dep. at 8 & 16.

When the check was eventually returned due to insufficient funds, Mr. Mihalick reported it to the Berlin Police.  K. Harrison Dep. at 16.  In response to the letter sent by the Mihalick's, Mr. Harrison provided them with the Money Orders to cover the check.  Id. at 11.   When the Mihalicks bank refused to accept the Money Orders, Mr. Mihalick again went to the Berlin Police Department, signed the Arrest Warrant Application, and insisted the Mr. Harrison be arrested.  John Mihalick Dep. at 53; Exhibit E.

A reasonable jury could find that Defendants' actions in procuring the arrest and felony charges against Mr. Harrison despite his instructions regarding holding the Bounced Check and despite that he had provided the Money Orders as restitution were extreme

and outrageous.  What is most outrageous is that the Mihalicks held the Money Orders for four months before depositing them, yet claimed that no restitution was made under oath, intending to procure Mr. Harrison's arrest.  Moreover, a reasonable jury could find that in making the false statement that no restitution had been made and insisting on Mr. Harrison arrests, Mr.  Mihalick went beyond that which is tolerated in a decent society, especially given the nature of the dispute and the relationship between the parties.

### IV.     CONCLUSION

Based on the argument present above and the attached exhibits, Plaintiffs object to Defendants' motion for summary judgment and respectfully request that the Court deny said motion.

PLAINTIFFS,

_____
Robert O. Wynne
Gould, Killian & Wynne
280 Trumbull Street, 21st Floor
Hartford, CT 06103
TEL: (860) 278-1270
FAX: (860) 244-9290
Federal Bar No. CT 10394

16

## **CERTIFICATION**

I hereby certify that on the 12th day of April 2004 a copy of the foregoing was sent via first-class mail, postage-prepaid to:

James N. Tallberg, Esq.
Updike Kelly & Spellacy, P.C.
One State Street
P.O. Box 23127
Hartford, CT  06123-1277

Paul W. Smith, Esq.
36 Main Street
P.O. Box 338
Windsor Locks, CT  06096

_____
Robert O. Wynne