UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH HARRISON, LAURA HARRISON and D&L AUTO BODY & TOWING, INC. | : : : : | CIVIL ACTION NO. 3:02CV477 (AVC) |
| Plaintiffs, | : : | |
| V. | : : | |
| SEAN MCMAHON, GERALD R. CHARAMUT, JOHN MIHALIK and JULIE MIHALIK | : : : : | |
| Defendants. | : | APRIL 12, 2004 |

LOCAL RULE 56(a)2 STATEMENT
IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' SEAN MCMAHON
AND GERALD CHARAMUT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a)2 of the Local Rules, Plaintiffs, Kenneth Harrison, Laura Harrison and D&L Autobody & Towing, Inc. (hereinafter referred to collectively as "Plaintiffs"), submit the following response to Defendants', Sean McMahon and Gerald Charamut's, Local Rule 56(a)2 Statement.

1.Plaintiffs admit the statement contained in paragraph 1.

2.Plaintiffs admit the statement contained in paragraph 2.

3.Plaintiffs admit the statement contained in paragraph 3.

4. Plaintiffs admit the statement contained in paragraph 4.

5. Plaintiffs admit the statement contained in paragraph 5.

6. Plaintiffs admit the statement contained in paragraph 6.

7. Plaintiffs admit the statement contained in paragraph 7.

8. Plaintiffs admit the statement contained in paragraph 8.

9. Plaintiffs admit the statement contained in paragraph 9.

10. Plaintiffs admit the statement contained in paragraph 10.

11. Plaintiffs admit the statement contained in paragraph 11.

12. Plaintiffs admit the statement contained in paragraph 12.

13. Plaintiffs admit the statement contained in paragraph 13.

14. Plaintiffs admit the statement contained in paragraph 14.

15. Plaintiffs admit the statement contained in paragraph 15.

16. Plaintiffs admit the statement contained in paragraph 16.

17. Plaintiffs admit the statement contained in paragraph 17.

18. Plaintiffs deny the statement contained in paragraph 18. Deposition of Julie Mihalick of 8/7/03 ("Julie Mihalick Dep.") at 51 & 53.

19. Plaintiffs deny the statement contained in paragraph 19. *Ibid*.

20. Plaintiffs admit the statement contained in paragraph 20.

21. Plaintiffs admit the statement contained in paragraph 21.

22. Plaintiffs admit the statement contained in paragraph 22.

23. Plaintiffs admit the statement contained in paragraph 23.

24. Plaintiffs deny that Detective McMahon forwarded the Money Orders to Superior Court, G.A. 15. Deposition of Sean McMahon of 8/7/03 ("McMahon Dep.") at 38-40. Plaintiffs admit the remainder of the statement contained in paragraph 24.

25. Plaintiffs admit the statement contained in paragraph 25.

26. Plaintiffs admit the statement contained in paragraph 26.

27. Plaintiffs admit the statement contained in paragraph 27.

28. Plaintiffs admit the statement contained in paragraph 28.

29. Plaintiffs admit the statement contained in paragraph 29.

30. Plaintiffs admit the statement contained in paragraph 30.

31. Plaintiffs admit the statement contained in paragraph 31.

32. Plaintiffs admit the statement contained in paragraph 32.

33. Plaintiffs admit the statement contained in paragraph 33.

34. Plaintiffs admit the statement contained in paragraph 34.

35. Plaintiffs admit the statement contained in paragraph 35.

36. Plaintiffs admit the statement contained in paragraph 36.

37. Plaintiffs admit the statement contained in paragraph 37.

38. Plaintiffs admit the statement contained in paragraph 38.

39. Plaintiffs admit the statement contained in paragraph 39.

40. Plaintiffs admit the statement contained in paragraph 40.

41. Plaintiffs admit the statement contained in paragraph 41.

42. Plaintiffs denies that Kenneth Harrison was not searched. Deposition of Kenneth Harrison of 8/8/03 ("K. Harrison Dep.") at 51. Plaintiffs admit the remainder of the statement contained in paragraph 42.

43. Plaintiffs admit the statement contained in paragraph 43.

44. Plaintiffs admit the statement contained in paragraph 44.

**45. Plaintiffs admit the statement contained in paragraph 45.

46. Plaintiffs deny that a nolle was entered on the charges against Kenneth Harrison. K. Harrison Dep. at 53; transcript of record in <u>State v. Harrison</u>, CR 990182036S, 7/8/99 attached to Plaintiffs' Memo. as Exhibit Q.

47. Plaintiffs admit the statement contained in paragraph 47.

48. Plaintiffs admit the statement contained in paragraph 48.

49. Plaintiffs admit the statement contained in paragraph 49.

50. Plaintiffs deny the statement contained in paragraph 50. Depositon of

4

Laura Harrison ("L. Harrison Dep.") at 62-65.

    51.    Plaintiffs admit the statement contained in paragraph 51.

    52.    Plaintiffs admit the statement contained in paragraph 52.

    53.    Plaintiffs admit the statement contained in paragraph 53.[1]

    54.    Plaintiffs admit the statement contained in paragraph 54.

    55.    Plaintiffs admit the statement contained in paragraph 56.

    56.    Plaintiffs admit the statement contained in paragraph 56.

    57.    Plaintiffs admit the statement contained in paragraph 57.

    58.    Plaintiffs admit the statement contained in paragraph 58.

    59.    Plaintiffs admit the statement contained in paragraph 59.

    60.    Plaintiffs admit the statement contained in paragraph 60.

## **DISPUTED ISSUES OF MATERIAL FACT**

    1.    When passing the disputed check to Mr. Mihalick on January 28, 1999, Mr. Harrison told Mr. Mihalik to hold the check as he had to deposit a check in his account and wait for it to clear. Deposition of Kenneth Harrision of 8/8/03 ("K. Harrision Dep.") at 10 & 113.

    2.    On the very same day that Mr. Harrison gave the check to Mr. Mihalick, Julie

---

[1] Defendants' citation to the Deposition of Laura Harrison is incorrect. The citation should be to page 64,

5

Mihalick, the secretary and bookkeeper for Mr. Mihalick's business, presented the check to her bank, Enfield Community Federal Credit Union, for deposit.  Deposition of Julie Mihalick of 8/7/03 ("Julie Mihalick Dep.") at 8 & 16.

     3.    On or about February 14, 1999, Mr. Harrison remitted $2,640.00 in cash to Western Union's local agent, Stop and Shop, in exchange for Western Union money orders.  K. Harrison Dep. at 8.

     4.    The Mihalick's bank refused to giver her cash for the money orders, or credit her account for cash for the money orders, because her account did not have the funds in it to cover the $2,640.00 in money orders.  Julie Mihalick Dep. at 53-55.

     5.    Mr. Mihalick informed Detective McMahon that he received Western Union money orders from Harrison, but that he was unable to cash them.  Deposition of Sean McMahon of 8/7/03 ("McMahon Dep.") at 41.

     6.    Detective McMahon accepted the bald assertion of Mr. Mihalick that Mr. Harrison failed to make restitution.  Id. at 43-49.

     7.    Detective McMahon knew this was an unusual case in that Mr. Mihalick had admitted to receiving Western Union money orders from Mr. Harrison, as restitution.  Id. at 43 & 51.

---

not 54.

8. Detective McMahon admits he had no knowledge as to how money orders could be utilized in general. Id. at 47.

9. Detective McMahon made no attempt to validate Mr. Mihalick's assertions and determine whether or not the money orders were invalid. McMahon Dep. at 43-49.

10. Detective McMahon treated Mr. Harrison's case like every other bad check case. Id. at 43.

11. Detective McMahon failed to take the alleged invalid money orders into evidence. Id. at 59-61.

12. Detective McMahon omitted copies of the money orders from the arrest warrant application. Id. at 37-40.

13. The arrest warrant application stated that "no restitution has been made." A copy of the Arrest Warrant Application is attached to Plaintiffs' Memorandum of Law ("Plaintiff's Memo.") as Exhibit E.

14. Detective McMahon conceded to Mr. Harrison that he knew restitution had been made, but told him that Mr. Mihalick said he could not cash the Money Orders because they were not signed by Mr. Harrison. K. Harrison Dep. at 27.

15. Detective Harrison was concerned that despite Detective McMahon's promise to delay serving the arrest warrant, the warrant may still get entered into the

system and that Mr. Harrison could well get picked up on the warrant. L. Harrison Dep. at 24-28.

16. In stating that "maybe I can get [the warrant] vacated, if we make good" on the debt, Detective Harrison did not mean to imply that she would be the actual person to have the warrant vacated. Id. at 33-38.

17. In discussing the arrest warrant with Detective McMahon, Detective Harrison did not imply or intend to imply that she would use her authority as a police officer to get the warrant vacated. Ibid.

18. Detective McMahon told Detective Harrison that if Mr. Harrison showed that he made restitution, he would have the warrant vacated. McMahon Dep. at 70.

19. Detective McMahon suggested that Mr. Harrison provide new money orders. L. Harrison Dep. at 41.

20. Detective Harrison was informed by Western Union that it would take five to seven business days to cancel money orders. L. Harrison Dep. 43.

21. Detective Harrison was concerned that if they sent the Mihalicks new money orders, they would have two sets of valid money orders and that they could cash both sets before the cancellation of the original money orders was effective. Ibid.

22. Detective Harrison was also concerned that if Mr. Harrison waited for the

five to seven days for the original money orders to be cancelled and then provided the Mihaliks with new ones, he may get picked up on the arrest warrant in the interim before it was vacated. Id. at 43-44.

23. Western Union informed Detective Harrison that the Money Orders were valid financial instruments , even if the purchaser did not fill in any of the fields. Id. at 43.

24. Western Union provided Detective Harrison with a letter verifying that the Money Orders were valid in the same state that the Mihalicks possessed them in. Id. at 45-46; a copy of the letter from First Data Corp. dated March 29, 1999 is attached to Plaintiffs' Memo. as Exhibit K.

25. In the afternoon of March 30, 1999, Mr. Harrison and Detective Harrison went to the Berlin Police Department together with the intent of showing Detective McMahon the letter from Western Union. K. Harrison Dep. at 41-42.

26. Detective Harrison informed Detective McMahon that she had a letter from Western Union confirming that the Money Orders n the Mihalicks' possession were valid without a signature of the purchaser. L. Harrison Dep. at 52.

27. Detective McMahon asked whether the Harrisons had provided the Mihalicks with new money orders. Ibid.

28. Detective Harrison informed him they had not as the Money Orders in the

9

Mihaliks' possession were valid.  Ibid.

29.    Detective Harrison held out the letter from Western Union.  Ibid.

30.    At that point, Detective McMahon became loud and belligerent, stating "I'll tell you what we're going to do, detective. Your husband's under arrest."  Id. At 53; K. Harrison Dep. at 45-46.

31.    Detective McMahon then held a door open leading into the interior of the police department, stated "your husband's going in the back," pointed a finger at Mr. Harrison, and motioned for him to go in the back.  L. Harrison Dep. at 53.

32.    Detective McMahon stated "he's under arrest," and "call in another officer to process him, because I'm going home."  Ibid.

33.    Detective Harrison again informed Detective McMahon that she had a letter stating the Money Orders were valid and again attempted to hand it to him.  Id. 53-54.

34.    Detective McMahon said "I'm not looking at nothing," and accompanied Mr. Harrison into the interior of the police department.  Id. At 54.

35.    After Mr. Harrison was arrested and escorted into the police department for processing, Detective Harrison and Detective McMahon exchanged words in a small lobby in the front of the police station.  Id. at 57.

36.    The Mihalick's bank did in fact accept the same Money Orders for deposit

that Mr. Harrison gave them on or about February 14, 1999. John Mihalick Dep. at 76; Julie Mihalick Dep. at 54 & 64.

37. Mr. Harrison never signed the Money Orders prior to the Mihalick's depositing them. Affidavit of Ken Harrison of 4/8/04, ¶ 9, attached to Plaintiffs' Memo. as Exhibit L.

38. After Mr. Harrison was arrested on March 30, 1999, the State's Attorney's Office determined that the money orders were valid when they were given to the Mihalicks by Mr. Harrison on February 14, 1999. Letter from Anthony Duarte to Mr. Mihalick dated June 15, 1998 (sic) is attached to Plaintiffs' Memo. as Exhibit M.

39. On July 8, 1999, the court entered a dismissal of the charges against Mr. Harrison. Transcript of State v. Harrison, CR 990182036-S, July 8, 1999 attached to Plaintiffs' Memo. as Exhibit Q.

40. Defendant Chief Charamut sent a letter to Chief Dennis Clisham of the Naugatuck Police Department dated April 6, 1999, including a copy of a letter sent by Detective McMahon to Chief Charamut dated April 2, 1999. Deposition of Gerald Charamut of 8/8/03 ("Charamut Dep.") at 23; a copy of the letter from Chief Charamut to Chief Clisham dated April 6, 1999 is attached to Plaintiffs' Objection to Defendants' Motion for Summary Judgment as Exhibit N.

41. The letter, including the attached letter from Detective McMahon, contains the following false accusations regarding Detective Harrison's actions on March 25 and March 30, 1999: that she "repeatedly stated that she knew of the prosecutors at GA 15 and that she was contemplating contacting said prosecutor and having the arrest warrant vacated;" that Detective Harrison indicated she would use her authority a member of the Naugatuck Police Department to interfere with Detective McMahon's investigation and that she would use her authority to have the warrant vacated; that Detective Harrison "made several derogatory comments about Mr. Mihalick;" that Detective Harrison was "extremely belligerent and hostile" toward Detective McMahon; that this act would "come back to [Detective McMahon];" that "knowing that [Detective McMahon's] shift was concluding, [Detective Harrison] yelled at him to, 'Go on. Get out;'" that Detective Harrison stated to Detective McMahon that "she would speak to [him] and behave in any manner that she pleased;" and that Detective Harrison "kept shoving her hand outward and pointing at [Detective McMahon] while coming within sever inches of [his] face." Ibid.

42. Detective Harrison denies the false accusations cont ained in Chief Charamut's letter. Affidavit of Laura Harrison of 8/12/03, ¶¶ 8-15, attached to Plaintiffs' Memorandum of Law as Exhibit P.

PLAINTIFFS,

_____
Robert O. Wynne
Gould, Killian & Wynne
280 Trumbull Street, 21st Floor
Hartford, CT 06103
TEL: (860) 278-1270
FAX: (860) 244-9290
Federal Bar No. CT 10394

## **CERTIFICATION**

       I hereby certify that on the 12th day of April 2004 a copy of the foregoing was sent via first-class mail, postage-prepaid to:

James N. Tallberg, Esq.
Updike Kelly & Spellacy, P.C.
One State Street
P.O. Box 23127
Hartford, CT  06123-1277

Paul W. Smith, Esq.
36 Main Street
P.O. Box 338
Windsor Locks, CT  06096

                                                _____
                                                Robert O. Wynne