UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

2004 MAY 26  P 4: 33

U.S. DISTRICT COURT
HARTFORD, CT.

KENNETH HARRISON, LAURA
HARRISON, and D & L AUTO BODY
& TOWING, INC.,
  Plaintiffs,

VS.                                      :   Civil No. 3:02CV477(AVC)

SEAN MCMAHON, GERALD R.
CHARAMUT, JOHN MIHALIK, and
JULIE MIHALIK,
  Defendants.

### RULING ON THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is an action for damages alleging violations of the Fourth Amendment to the United States Constitution. It is brought pursuant to 42 U.S.C. § 1983 and, in addition, alleges violations of common law precepts concerning malicious prosecution and intentional infliction of emotional distress. The plaintiffs, Kenneth Harrison and Laura Harrison, allege that the defendants, John Mihalik and Julie Mihalik, falsely reported to police that Kenneth Harrison knowingly issued a bad check to them and that the defendant, Sean McMahon, an officer of the Berlin police department, falsely arrested him without probable cause.

The defendants now move for summary judgment pursuant to Fed. R. Civ. P. Rule 56(c). The issues presented are: (1) whether the claim of malicious prosecution fails because the Mihaliks, as complaining citizens, lacked probable cause to believe that Mr. Harrison issued a bad check to them with the

intent to defraud; (2) whether the claim of false arrest fails on grounds that McMahon had probable cause to arrest Mr. Harrison; (3) whether the claim of false arrest fails on grounds that Mr. Harrison did not receive a favorable disposition on the criminal charge of issuing a bad check; (4) whether McMahon is entitled to qualified immunity; and, (5) whether the claim of intentional infliction of emotion distress fails for want of extreme and outrageous conduct.

For the reasons hereinafter set forth, the court concludes that: (1) the claim of malicious prosecution does not fail because the plaintiffs have raised a genuine issue of material fact that the Mihaliks, as complaining citizens, lacked probable cause to believe that Kenneth Harrison issued a bad check to them with the intent to defraud; (2) the claim of false arrest does not fail because the plaintiffs have raised a genuine issue of material fact as to whether McMahon had probable cause to arrest Kenneth Harrison; (3) the claim of false arrest does not fail because Kenneth Harrison received a favorable disposition on the criminal charge of issuing a bad check; (4) McMahon is not entitled to qualified immunity; and, (5) the claim of intentional infliction of emotion distress fails for want of extreme and outrageous conduct.

The motions for summary judgment (documents nos. 24 and 25) are therefore GRANTED in part and DENIED in part.

## FACTS

Examination of the complaint, affidavits, declarations, pleadings, Local Rule 56(a) statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed material facts.

During all relevant times, Kenneth Harrison owned and operated D&L Autobody & Towing ("D & L"), a tractor-trailer car carrier business. In January 1999, Kenneth Harrison hired John Mihalik as an independent subcontractor to haul cars for D & L. Harrison alleges that the two agreed that he would pay John Mihalik on a monthly basis. However, John Mihalik alleges that Harrison promised to pay him on a weekly basis.

Harrison alleges that, although the agreement between the two called for monthly payments, Mihalik approached him after only the second week of his employment about getting paid early because he needed money. On January 28, 1999, Harrison gave Mihalik a check for $2,640 for services rendered by him to D & L. Kenneth Harrison alleges that when he gave the check to Mihalik, he told him not to cash the check immediately because he was waiting for a deposit to his checking account to clear. However, on the next day, Julie Mihalik presented the check to her bank for deposit. The bank returned the check for "non-sufficient funds."

On or about February 10, 1999, John Mihalik contacted the

3

Berlin police regarding the bounced check. A Berlin police employee told him that he must give Harrison notice and opportunity to make restitution before he could file a complaint. On February 11, 1999, after allegedly making several attempts to contact the Harrisons and resolve the situation, John Mihalik sent a letter to Kenneth Harrison via certified mail notifying D & L that the bank returned the check. The letter stated: "If not taken care of within 8 days of receipt of this notice we will be going through the legal channels to get this resolved."

On February 14, 1999, Harrison purchased money orders from Western Union in the amount of $2,640. On the same day, Harrison delivered the money orders in person to Mihalik. Harrison did not sign the money orders before delivering them to Mihalik.

After receiving the money orders, Julie Mihalik attempted to cash them at her bank. The bank would not accept the money orders because Kenneth Harrison had not signed them.

On February 22, 1999, Mihalik went to the Berlin police department and spoke to the defendant, detective McMahon. John Mihalik asked the police to arrest Harrison. Mihalik signed an affidavit in support of an application for an arrest warrant for Harrison. On the arrest warrant application Mihalik checked a box indicating that: "no restitution has been made." McMahon did not investigate whether the money orders that Harrison gave to Mihalik constituted valid restitution. The Harrisons allege that

McMahon did not include evidence of the money orders in the warrant application. The defendants dispute this, and claim that, McMahon did include evidence of the money orders in the warrant application.[1]

On March 17, 1999, an assistant state's attorney, one Carl Taylor, signed the arrest warrant application. On March 18, 1999, a judge of the Connecticut superior court signed the arrest warrant for Harrison for issuing a bad check in violation of Conn. Gen. Stat. § 53a-128.[2] On March 19, 1999, the Berlin

---

[1] Although the record before the court contains copies of the warrant application, neither party has provided any evidence as to what, if any, documents or attachments accompanied the warrant application.

[2] Conn. Gen. Stat. § 53a-128 provides in relevant part:
(a) A person is guilty of issuing a bad check when: (1) As a drawer or representative drawer, he issues a check knowing that he or his principal, as the case may be, does not have sufficient funds with the drawee to cover it, and (A) he intends or believes at the time of the issuance that payment will be refused by the drawee upon presentation; or (2) he passes a check knowing that the drawer thereof does not then have sufficient funds with the drawee to cover it, and (A) he intends or believes at the time the check is passed that payment will be refused by the drawee upon presentation, and (B) payment is refused by the drawee upon presentation.
(b) For the purposes of this section, an issuer is presumed to know that the check or order, other than a post dated check or order, would not be paid, if: (1) The issuer had no account with the drawee at the time the check or order was issued; or (2) payment was refused by the drawee for insufficient funds upon presentation within thirty days after issue and the issuer failed to make good within eight days after receiving notice of such refusal. For the purposes of this subsection, an issuer is presumed to have received notice of such refusal if the drawee or the payee provides proof of mailing such notice by certified mail, return receipt requested, to the issuer at his last known address.

5

police department mailed a letter to Harrison informing him of the warrant for his arrest.

On March 25, 1999, after receiving notice of the arrest warrant, Harrison contacted McMahon, at the Berlin police department. McMahon informed Harrison that he would hold the warrant and delay serving it in order to give Harrison time to resolve the dispute with Mihalik. McMahon suggested that Harrison request Western Union to void the unsigned money orders, and then purchase new ones.

On March 25, 1999, Laura Harrison visited the Berlin police department to discuss the matter with McMahon. Laura Harrison informed McMahon that she was a detective with the Naugutuck, Connecticut police department, and requested that McMahon vacate the arrest warrant. McMahon explained to her that he would not execute the arrest warrant immediately and would allow Kenneth Harrison to obtain new money orders and make restitution. The defendants allege that Laura Harrison stated that she would make restitution with a Naugutuck police envelope.

On March 26, 1999, Laura Harrison called Western Union to inquire about voiding the previous money orders, and obtaining new ones. Laura Harrison learned from Western Union representatives that the money orders in the Mihaliks' possession were still valid, even without Kenneth Harrison's signature. At Laura Harrison's request, Western Union provided a letter to the

Harrisons stating: "Western Union money orders are valid financial instruments as long as the imprinted dollar amount has not been altered, no matter what field is filled in by the purchaser."

On March 30, 1999, the Harrisons went to the Berlin police station to discuss the arrest warrant with McMahon. The Harrisons attempted to show McMahon the letter from Western Union stating that the money orders were valid without a signature. Despite the Harrisons' insistence that money orders given to Mr. Mihalik were valid without the signature, McMahon refused to vacate the warrant. Instead, McMahon executed the warrant and placed Kenneth Harrison under arrest.

A different officer processed Kenneth Harrison for arrest inside the station. While the police processed him, McMahon and Laura Harrison exchanged angry words over the incident in the police station lobby. The police released Kenneth Harrison approximately forty-five minutes after his arrest on a promise to appear.

On April 6, 1999, Gerald Charamut, as the Berlin police chief, sent a letter to one Dennis Clisham, chief of the Naugutuck police department and Laura Harrison's supervisor at the Naugutuck police department. The letter included a memorandum sent by McMahon to Charamut expressing concerns that Laura Harrison inappropriately tried to use her authority as a

7

detective in Naugutuck to have the warrant for her husband's arrest vacated, and that she became "extremely belligerent and hostile" on the day of Kenneth Harrison's arrest. Laura Harrison denies that she inappropriately tried to influence the pending charges against her husband.

On June 15, 1999, the state's attorney's office sent a letter to the Mihaliks advising them that they should redeem the money orders originally given to them by Kenneth Harrison. The letter stated that the money orders were valid when Kenneth Harrison originally gave them to the Mihaliks. Subsequently, the Mihaliks were able to cash the money orders without Harrison ever signing them.

On July 8, 1999, Kenneth Harrison appeared in Connecticut superior court for a hearing in connection with the charge of issuing a bad check. At the hearing the prosecution moved to enter a *nolle prosequi*. Harrison's attorney asked the court to instead grant a motion to dismiss. After listening to Harrison's argument for dismissal and inquiring into whether the prosecution intended on going forward with the case, the court simply stated: "Dismissal may enter."

On February 19, 2002, the Harrison's filed the present action in the Connecticut superior court.

## STANDARD

On a motion for summary judgment, the moving party must show

that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Aldrich v. Randolph Cent. Sch. Dist, 963 F.2d 520, 523 (2d Cir. 1992)(quoting Anderson, 477 U.S. at 248).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56; see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(d). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Zigmund v. Foster, 106 F.Supp.2d 352, 356

9

(D.Conn. 2000)(citations and quotation marks omitted).

Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of summary judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non-moving] party." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

## DISCUSSION

1. Malicious Prosecution

The defendants John Mihalik and Julie Mihalik move for judgment as a matter of law on the claim of malicious prosecution, asserting that the claims must be dismissed because they had a bona fide belief that Kenneth Harrison intended to defraud them and, hence, probable cause to believe that the Kenneth Harrison committed the crime of issuing a bad check.

The plaintiffs respond that, to the contrary, the Mihaliks initiated criminal charges against Kenneth Harrison without a bona fide belief that he intended to defraud them, and hence without probable cause.

"Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 708, cert. denied, 252 Conn. 954 (2000). "Whether the facts are sufficient to establish

the lack of probable cause is a question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law." DeLaurentis v. City of New Haven, 220 Conn. 225, 252-53 (1991).

For the purposes of a cause of action for malicious prosecution, "the legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action, and such as would warrant a man of ordinary precaution, prudence and judgment, under the circumstances, in entertaining it." Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 709, cert. denied, 252 Conn. 954 (2000) (quoting DeLaurentis v. New Haven, 220 Conn. 225, 256 (1991)).[3] Thus, "a defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." Id.

The essential elements for the crime of issuing a bad check are: (1) the drawing of a check on a bank or other depository for payment of money; (2) knowledge at the time of the drawing of the check that the drawer has not sufficient funds in, or credit with, the bank or depository to meet the check in full upon

---

[3]Although, the court in DeLaurentis refers to a cause of action for vexatious litigation, the court specifically states that the causes of action require the same elements to be proved. DeLaurentis v. New Haven, 220 Conn. 225, 256 (1991).

presentation; and, (3) <u>with the intent to defraud</u>. <u>State v. Callahan</u>, 183 A.2d 861, 863 (Conn. 1962)(emphasis added).

The court agrees with the defendants that a genuine issue of fact exists as to whether the Mihaliks had a reasonable, good faith belief that Kenneth Harrison gave them a check with the intent to defraud. The parties dispute whether Harrison asked Mihalik to wait before cashing the check so that there would be sufficient funds in Harrison's account. Such a request would undermine the defendants' contention that Kenneth Harrison acted with the intent to defraud them. Thus, this disputed fact directly relates to whether the Mihaliks believed Harrison issued them a check with the intent to defraud.

2.  <u>False Arrest and the Fourth Amendment</u>

A.  Probable Cause

McMahon and Charamut move for judgment as a matter of law with respect to the Fourth Amendment cause of action. Specifically, McMahon and Charamut assert that because McMahon had probable cause to arrest Harrison, Harrison cannot establish that they denied him a right, privilege or immunity secured by the Constitution or laws of the United States.

Mr. Harrison responds that a genuine issue of fact exists as to whether McMahon lacked probable cause to arrest him for issuing a bad check. Specifically, Harrison maintains that McMahon's failure to include information regarding the money

12

orders in the application for the arrest warrant coupled with McMahon's failure to investigate whether Harrison made valid restitution despite the unsigned money orders, constituted a reckless omission of fact necessary to the determination of the existence of probable cause.

In order to establish a claim for false arrest, a plaintiff must establish that: "the defendant intentionally confined him without his consent and without justification." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)(quoting Weyant v. Okst, 101 F3d 845, 852 (2d Cir. 1996)). Probable cause to arrest constitutes justification. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). There can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff. Id.

The issuance of a warrant by a neutral magistrate normally creates a presumption of probable cause. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). In order to challenge probable cause where a neutral magistrate issued a warrant, "the plaintiff must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)(citation omitted).

13

"[R]ecklessness may be inferred where the omitted information was critical to the probable cause determination." Golino v. City of New Haven, 950 F.2d 864, 871 (2d Cir. 1991).

In viewing the facts in the light most favorable to the party opposing the motion for summary judgment, the court concludes that a trier of fact could find that McMahon omitted critical information relevant to the issue of probable cause. In this regard, according to the Harrisons, McMahon did not disclose in the warrant application that Kenneth Harrison attempted to make restitution to the Mihaliks through money orders. This fact, if believed, would show a lack of intent to defraud, a required element of the crime charged. In light of the above, the motion for summary judgment on the issue of whether there was probable cause to arrest Kenneth Harrison is denied.

B.   False Arrest and Nolle Prosequi

McMahon and Charamut next assert that summary judgment should be granted in their favor on the claim of false arrest because Harrison did not receive a favorable disposition in the underlying criminal proceedings and, accordingly, he cannot fully satisfy the elements required to prove a false arrest. Specifically, they argue that the underlying criminal proceedings concluded with the entry of a *nolle prosequi*, and that a *nolle prosequi* is not a favorable disposition.

The Harrisons respond that Kenneth Harrison obtained a

favorable disposition sufficient to support a claim for false arrest pursuant to § 1983.

In order to maintain a claim for false arrest, a plaintiff must prove, among other things, that the underlying criminal proceedings terminated in his favor. Roesch v. Otarola, 980 F.2d 850, 852 (2d Cir. 1992). A criminal proceeding terminates in favor of the defendant when "final disposition is such as to indicate that the accused is not guilty." Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980).

Upon review of the record, the court observes that, while state prosecutors sought to "enter a nolle on the charge," the superior court, on motion by Kenneth Harrison, ordered the matter dismissed. Because this final disposition indicates that the accused was not guilty, the court concludes that record supports a finding that the criminal proceedings here terminated in Kenneth Harrison's favor.

3.  Qualified Immunity

The defendants next move for summary judgment asserting that McMahon is entitled to qualified immunity. Specifically, McMahon asserts that based on the information that he had at the time, he acted objectively reasonable in arresting Kenneth Harrison.

The plaintiffs respond that McMahon actions were not objectively reasonable because he had no probable cause to believe that Kenneth Harrison intended to defraud Mihalik.

"When a plaintiff alleges an arrest without probable cause, an arresting officer may assert the defense of qualified immunity if 'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002)(internal citations omitted). In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

Assessing the evidence in the light most favorable to the non-moving party, the court concludes that a trier of fact could find that it was not objectively reasonable for McMahon to believe that there was probable cause to arrest Mr. Harrison. Specifically, a trier of fact could find that: (1) McMahon did not have knowledge of and failed to investigate whether money orders needed to be signed in order to be negotiated; (2) McMahon did not include evidence of the money orders in the application for the arrest warrant; and, (3) that McMahon refused to consider prior to making the arrest the letter from Western Union stating that the money orders did not require a signature to be

negotiated. Based on this evidence, the court concludes a trier of fact could conclude that McMahon's actions were not objectively reasonable. The motion for summary judgment on the issue of qualified immunity is therefore denied.

4.   <u>Intentional Infliction of Emotional Distress</u>

The defendants next move separately for summary judgment on the causes of action for intentional infliction of emotional distress, each asserting that their actions were not extreme and outrageous. Specifically, the Mihaliks assert that their actions were appropriate and reasonable in light of the set of circumstances leading up to their filing of the complaint with the Berlin police. McMahon and Charamut assert that they simply fulfilled their duties to enforce the laws of Connecticut.

The plaintiffs respond that a genuine issue of fact exists as to whether the defendants' conduct was sufficiently extreme and outrageous.

To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove, among other things, that the defendant's conduct was "extreme and outrageous."[4] See

---

[4] The four elements required for intentional infliction of emotional distress cause of action are: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and, (4) that the emotional distress sustained by the plaintiff was severe." <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 266-67 (1991).

DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991). In order to meet the standard of "extreme and outrageous," the conduct must "exceed[] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Petyan v. Ellis, 200 Conn. 243, 254 n. 5 (1986). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Carrol v. Allstate Ins., Co., 262 Conn. 433, 443 (2003)(citations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 443. "If reasonable people may differ as to whether the conduct is extreme and outrageous, the question is one for the jury." Carroll v. Ragaglia, 292 F.Supp.2d 324, 344 (D.Conn. 2003).

Upon review of the record, the court concludes that the conduct alleged does not rise to the level of extreme and outrageous. The motions for summary judgment with respect to the claims for intentional infliction of emotional distress are therefore granted.

CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (documents no. 24 and 25) are GRANTED in part and DENIED in part.

It is so ordered this 24th day of May 2004, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge